TREVOR KEEGAN
Pro Se
19337 63rd PL NE
KENMORE, WA, 98028
Tel: (425)318-9505
Email: trevorjkeegan@gmail.com

TREVOR KEEGAN, IN PRO PER

FILED _____ ENTERED
LODGED _____ RECEIVED

MAY 10 2024    MH

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| TREVOR KEEGAN, | ) Case No.: ___2:24-cv-00656-BAT___ |
| Plaintiff, | ) To be provided by the court |
| | ) |
| vs. | ) COMPLAINT AND JURY DEMAND |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant(s). | ) |
| | ) |

For his complaint against Defendant United States of America, ("Defendant" or "United States" herein), Plaintiff Trevor Keegan ("Mr. Keegan" herein) states and alleges as follows:

I.    INTRODUCTION

Plaintiff Trevor Keegan was illegally imprisoned by Defendant for 69 days beyond his mandatory release date from federal prison in connection with a 2020 conviction. During this period of illegal imprisonment, Mr. Keegan was deprived of his freedom. Mr. Keegan sustained injuries because of his illegal imprisonment and brings this action for money damages under the Federal Tort Claims Act.

II.    **Jurisdiction and Venue**

This Court has jurisdiction over Plaintiff's claims Pursuant to 28 U.S.C. § 1346(b)(1) and 29 U.S.C. § 216(b). Venue is proper in the Western District of Washington pursuant to 28 U.S.C. § 1402(b).

III.    **PARTIES**

Plaintiff, Trevor Keegan, is currently a resident of King County, Washington. During the time he was illegally imprisoned, Mr. Keegan was an inmate at FDC Honolulu, a secured, Administrative Level, correctional facility in the District of Hawaii. During the period he was illegally confined, he was transferred to a Residential Re-Entry Center in Seattle, Washington.

Defendant United States of America acted at all times relevant herein through the Bureau of Prisons ("BOP" herein), and the BOP's Employees, Agents, and Contractors.

IV.    **FACTS**

1. In May 2021, Mr. Keegan pleaded guilty to a single count relating to a 2020 Conspiracy to distribute Lysergic Acid Diethylamide in case number 1:20-Cr-00076, District of Hawaii. He was subsequently sentenced to 15 months imprisonment and two years of supervised release. He was given 7 days credit for time he served in pre-trial detention in 2020, directly after his arrest for this charge. On August 30, 2021, Mr. Keegan self-surrendered to FDC Honolulu to serve his sentence.

2. On January 15th, the First Step Act's phase in period ended. This required the BOP to change its policies for Good Conduct Time credit computation and release date computation.

3. On January 12, 2022, the BOP set in place interim procedures in order to comply with the new requirements of the FSA.

4. As a part of these interim procedures, the BOP decided to set cutoff dates for manual FSA time credit calculations.

5. Under these procedures, Mr. Keegan was assigned a cutoff date for earning FSA Credits of December 25, 2022.

6. Mr. Keegan's FSA credits were calculated on January 20, 2022. Mr. Keegan was awarded 44 days of FSA credit.

8. On January 25, Mr. Keegan began to raise the issue of his release date through informal resolution with staff, stating he believed he should have earned more FSA credits.

9. On February 22, 2022, Mr. Keegan began the BOP administrative remedies process, filing a BP-8 form to challenge the miscalculation of his time credits. Mr. Keegan's release date did not change as a result of his BP-8.

10. On March 1, 2022, Mr. Keegan filed a BP-9, the second step in the BOP administrative remedies process.

11. On April 6, 2022, Mr. Keegan received a response acknowledging an error, and that the BOP had recalculated his credit time to 58 days.

12. Mr. Keegan's interim procedures cutoff date remained unchanged as December 25, 2022, in this re-calculation.

13. These interim procedures remained in effect during this initial period and continued until implementation of an auto-calculation application to BOP's real-time information system (known as SENTRY) and full integration between SENTRY and BOP's case management system (known as INSIGHT).

14. The BOP's auto calculation software was not set in place prior to Mr. Keegan's release on July 19, 2022.

15. Defendant's only justification for confining Mr. Keegan was based on this interim procedure.

16. Defendant has limited legal right to implement procedures, that right does not supersede the law.

17. The BOP had no legal justification for its implementation of a cutoff date as a part of its interim procedures.

18. The FSA does not grant the BOP discretion to stop awarding FSA Time Credits at any certain point.

19. Defendant had no legal justification for confining Mr. Keegan between May 11, 2022, and July 19, 2022.

20. Mr. Keegan had a low or minimum risk for recidivism as classified by the Bureau of Prisons.

21. During his term of imprisonment, Mr. Keegan was not subject to any disciplinary actions or other events which would have resulted in the loss of good time credit or First Step Act Credit.

22. Mr. Keegan was considered a Low or Minimum risk recidivism level by the BOP, making him eligible for 15 days of credit for every 30 days incarcerated at his designated facility.

23. If calculated at this rate: On May 11, 2022, Mr. Keegan's Step Act Credit days began to exceed the days remaining in his sentence.

24. Accordingly, Mr. Keegan's legally mandated release date was May 11, 2022.

25. Pursuant to 28 U.S.C. § 2675 and 28 C.F.R. § 14.2, Mr. Keegan (Pro Se) submitted a claim under the Federal Tort Claims Act to the BOP by certified mail on July 12, 2023, regarding his illegal imprisonment. The Certified Tracking number, 9589071052700100937548, indicates that it was delivered on July 17, 2023. As of the date of this Complaint, the BOP has not responded to Mr. Keegan's claim.

26. On April 28, 2024, Mr. Keegan submitted a Freedom of Information Request to the BOP, requesting a copy of Mr. Keegan's prison file. As of the date of this Complaint, Mr. Keegan's request has not been acknowledged or fulfilled.

37. Mr. Keegan's illegal imprisonment and the conditions thereof were the result of the acts and omissions of BOP employees acting within the course and scope of their employment with the BOP.

V.    **STATUTORY AND REGULATORY SCHEME OF THE FSA**

The First Step Act ("FSA") was enacted on December 21, 2018. The FSA provides certain incarcerated persons the opportunity to earn time credits ("FSA Time Credits") for participation in evidence-based recidivism reduction programming ("EBRR") or productive activities ("PA"). 18 U.S.C. § 3632(d)(4)(A). "[F]or every 30 days of successful participation," a person "shall earn 10 days of time credits." § 3632(d)(4)(A)(i). If he or she has been "determined by the Bureau of Prisons to be at a minimum or low risk of recidivating" for a certain period, that person shall earn "an additional 5 days," for a total of 15 every 30 days. § 3632(d)(4)(A)(ii). The FSA provides that no such credits can be earned before the date the FSA was enacted or during a period of detention prior to the incarcerated person's sentence commencing. § 3632(d)(4)(B). The FSA also provides that those

convicted of certain crimes or with deportation orders are ineligible for credits. § 3632(d)(4)(D), (E). The statute authorizes the Bureau of Prisons ("BOP") to develop guidelines for reductions of time credits for certain rule violations. § 3632(e).

The FSA required the Attorney General, within 210 days of the FSA's enactment, to develop a "risk and needs assessment system" to assess each incarcerated person's recidivism risk and assign appropriate EBRR programming. § 3632(a). On July 19, 2019, the Attorney General announced that the required "risk and needs assessment," called PATTERN, had been developed on schedule. The FSA then required the Director of the BOP, within 180 days of the release of PATTERN, to complete an initial assessment of each incarcerated person and begin to implement EBRR and PA. § 3621(h)(1). On January 15, 2020, the BOP announced that it had completed initial assessments of all incarcerated persons under the PATTERN system, again on schedule. The FSA provided a phase-in period in which to implement EBRR and PA of two years from the date the BOP completed the initial assessments. § 3621(h)(2). The phase-in period ended on January 15, 2022. The FSA provides that, beginning when it was enacted and through the phase-in period, the BOP "may begin to expand" existing EBRR and PA and "may offer to prisoners who successfully participate in such programs and activities the incentives and rewards," allowed by the FSA, including FSA Time Credits. § 3621(h)(4).

When an incarcerated person earns FSA Time Credits, those credits "shall be applied toward time in prerelease custody or supervised release," and the BOP "shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." § 3632(d)(4)(C). Prelease custody is defined as placement in either home confinement or a residential reentry center. § 3624(g)(2). Section 3624(g) defines "eligible prisoner[s]" as persons who have earned FSA Time Credits equal to the remainder of their terms of imprisonment, who have either reduced their recidivism risk levels or maintained a low or minimum risk level throughout their terms of imprisonment, and who meet an additional requirement depending on whether they are transferred to prerelease custody or supervised release. § 3624(g)(1). For a transfer to prerelease custody, a person must have had a minimum or low risk level for the last two reassessments or had a transfer petition approved by the warden of the prison. § 3624(g)(1)(D)(i) For transfers to supervised release, a person

must have had a minimum or low risk level at his or her last reassessment, and the statute provides that BOP "may transfer" such a person who has a term of supervised release as part of his or her sentence "to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632." § 3624(g)(1)(D)(ii), (3).

On January 19, 2022, the BOP's final rule (the "Rule") implementing the FSA's provisions regarding time credits was published in the Federal Register at 87 Fed. Reg. 2,705 (Jan. 19, 2022), which later was codified at 28 C.F.R. §§ 523.40 to 523.44. The Rule matches the statute's eligibility requirements, formula for calculating time credits, requirements for applying time credits toward prerelease custody or supervised release and its exclusion of the periods before the FSA was enacted and before the person began serving his or her sentence. §§ 523.41(d), 523.42(a), (b)(1), (c), 523.44. The Rule also provides that eligible persons: (i) "may earn FSA Time Credits for programming and activities in which he or she participated from December 21, 2018, until January 14, 2020" and (ii) "may earn FSA Time Credit if he or she is successfully participating in" the appropriate EBRR and PAs recommended based on PATTERN "on or after January 15, 2020." § 523.42(b)(2), (3). That is, the BOP elected to offer time credits throughout the phase-in period.

VI.    **Count I**: False Imprisonment under the Federal Tort Claims Act

1. Mr. Keegan incorporates the foregoing paragraphs as if set fourth herein.

2. Between May 11 and July 19, 2022, Defendant committed acts intended to confine Mr. Keegan at FDC Honolulu and other BOP Contracted facilities.

3. Mr. Keegan was in fact confined as intended by Defendant. Mr. Keegan was aware of and did not consent to his confinement.

4. Defendant had no legal justification for confining Mr. Keegan. Specifically, Defendant was obligated under 18 U.S.C. § 3624, 18. U.S.C. 3632 (4)(A)(i), (4)(A)(ii), 4(C), as well as 18 U.S.C. 3631 (b)(4)(e) and (b)(5), and other law to release Mr. Keegan from prison at the expiration of his term of imprisonment, accounting for good time credit and First Step Act's Earned time credits, on May 11, 2022.

5. Mr. Keegan sustained damages in the amount of $83,727.36 for the pain and suffering, emotional distress, loss of liberty and enjoyment of life, and economic loss he suffered because of the false imprisonment he endured for 69 days.

6. Mr. Keegan is entitled to recover the damages he sustained under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680.

VII.    **Count II**: Negligence under the Federal Tort Claims Act

1. Mr. Keegan incorporates the foregoing paragraphs as if set fourth herein.

2. Defendant owed Mr. Keegan a duty under 18 U.S.C. § 3624 and other law to release him from prison at the expiration of his term of imprisonment, accounting for good time credit and FSA earned time credits, on May 11, 2022.

3. Defendant breached this duty when it failed to release Mr. Keegan in May 2022, and thereafter until his release on July 19, 2022.

4. Mr. Keegan sustained damages in the amount of $83,727.36 for the pain and suffering, emotional distress, loss of liberty and enjoyment of life, and economic loss he suffered because of the Defendant's negligence.

5. Mr. Keegan is entitled to recover the damages he sustained under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680.

VIII.    **Jury Demand**

Mr. Keegan demands a trial by jury on all counts so triable and any other such counts which may hereafter be alleged.

WHEREFORE, Plaintiff Trevor Keegan respectfully requests the Court grant the following relief:

1. Findings that Defendant falsely imprisoned Mr. Keegan, breached its duty to release him, and is liable to him for the damages he sustained.

2. A money judgment against Defendant in the amount of $83,727.36 as and for compensatory relief for the damages Mr. Keegan sustained because of his false imprisonment and Defendant's negligence. An award against Defendant for the costs and expenses incurred by Mr. Keegan in bringing this action;

3. An award against Defendant for prejudgment interest; and

4. Any further and additional relief the Court deems just and equitable.

Respectfully Submitted,

TREVOR KEEGAN, Pro Se
19337 63rd PL NE
DATED: May 9, 2024                              Kenmore, WA 98028
Phone: (425) 318-9505
Email: trevorjkeegan@gmail.com

Complaint and Jury Demand