FILED ENTERED
LODGED RECEIVED

MAR 07 2025    RE

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON DEPUTY
BY

The Honorable Kymberly K. Evanson

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TREVOR KEEGAN,

                        Plaintiff,

    v.

UNITED STATES OF AMERICA,
SUSAN GIDDINGS,
JOHN/JANE DOE

                     Defendants.

Case No. 2:24-cv-656-KKE

**Amended Complaint Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents
AND
Jury Demand**

## I.    Introduction

Plaintiff Trevor Keegan sues the United States under the Federal Tort Claims ACT ("FTCA") alleging negligence and false imprisonment, requesting compensatory relief. Additionally, Keegan lists Defendant Susan Giddings, as well as John Doe/Jane Doe (to be named as discovered). He sues them in their individual capacities: for false imprisonment, abuse of policy, and fourth and fifth amendment constitutional rights violations, pursuant to Bivens v Six Unknown Named Narcotics Agents, seeking punitive damages.

The Court granted leave to amend due to the possibility that Plaintiff could cure his complaint by making allegations of other facts or by pursuing a different cause action.

## II.    Cause of Action, Sovereign Immunity, & Private Analog; Jurisdiction and Venue

The government has raised a facial attack (sovereign immunity) against Keegan's FTCA claim. As the court notes, it is Keegan's burden to allege the Court has subject matter jurisdiction. Leite, 749 F.3d at 1121. Without sufficient allegations to support a waiver of sovereign immunity, the case cannot be allowed to continue.

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims
Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents
AND Jury Demand
[Case No. 2:24-cv-656-KKE] - 1

Plaintiff Trevor Keegan
19337 63RD PL NE
KENMORE, WASHINGTON 98028
(425)-318-9505

The Government challenges Keegan's choice in his cause of action, suggesting that a civil rights action such as Bivens is the appropriate avenue for Keegan to pursue for his claims. Keegan agrees, this appears to be at least partially true.[1]

This Court notes that the "United States can be sued for "acts or omissions of investigative or law enforcement officers" for claims arising "out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C. § 2680(h). BOP correctional officers have been held to be subject to the law enforcement exception. *See Dickson v. United States*, 11 F.4th 308, 314 (5th Cir. 2021) ("BOP officials are 'law enforcement officers' within the meaning of the law enforcement proviso."). *Accordingly, to state a claim under the FTCA for false imprisonment, Keegan must allege that his false imprisonment resulted from the "acts or omissions" of investigative or law enforcement officers.* The government set a hurdle for Keegan in the third footnote in its October 7, 2024 filing (dkt 8 -page 9) "Keegan has not alleged that his harm was caused by an officer who is "empowered by the law to execute searches, to seize evidence, or to make arrests for violations of Federal Law."

Keegan requests that the Court consider 18 U.S. Code § 3050:

"An officer *or employee* (emphasis added) of the Bureau of Prisons may— (1) *make arrests* on or off of Bureau of Prisons property without warrant for violations of the following provisions regardless of where the violation may occur: sections 111 (assaulting officers), 751 (escape), and 752 (assisting escape) of title 18, United States Code, and section 1826(c) (escape) of title 28, United States Code; (2) *make arrests* on Bureau of Prisons premises or reservation land of a penal, detention, or correctional facility without warrant for violations occurring thereon of the following provisions: sections 661 (theft), 1361 (depredation of property), 1363 (destruction of property), 1791 (contraband), 1792 (mutiny and riot), and 1793 (trespass) of title 18, United States Code; and
arrest without warrant for any other offense described in title 18 or 21 of the United States Code, if committed on the premises or reservation of a penal or correctional facility

---

[1] While Bivens is a working avenue, Keegan also notes that 42 U.S.C. 1985(3) may also be an appropriate avenue for his claim.

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims
Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents
AND Jury Demand
[Case No. 2:24-cv-656-KKE] - 2

Plaintiff Trevor Keegan
19337 63RD PL NE
KENMORE, WASHINGTON 98028
(425)-318-9505

of the Bureau of Prisons if necessary to safeguard security, good order, or government property;

if such officer or employee has reasonable grounds to believe that the arrested person is guilty of such offense, and if there is likelihood of such person's escaping before an arrest warrant can be obtained. If the arrested person is a fugitive from custody, such prisoner shall be returned to custody. *Officers and employees of the said Bureau of Prisons may carry firearms under such rules and regulations as the Attorney General may prescribe."*

The BOP acknowledges that *all of its employees, regardless of their specific role, are considered "correctional workers first."* The government has never disputed that BOP personnel are responsible for sentence calculations and release dates. Specifically, these calculations happen at BOP's Designation and Sentence Computation Center in Grand Prairie Texas. Furthermore, 18 U.S. Code § 3050 explicitly grants BOP officers and employees the authority to make arrests both on and off BOP property without necessitating a warrant, demonstrating that their role is inherently law enforcement oriented. The statute gives this authority broadly to all BOP employees; thus all BOP employees are inherently law enforcement.

Because not only BOP "officers," but rather all *employees*, are empowered by law to "make arrests," the hurdle as imposed by the Government is overcome and the defense of sovereign immunity is removed.

Mr. Keegan was in custody of BOP's Warden Estela Derr at Federal Detention Center Honolulu, between May 11 and May 18, 2022, the beginning portion of Keegan's false imprisonment. During this time, Derr met the Government's requirements to be considered a law enforcement officer; empowered to search, make arrests, or seize evidence. As this court has noted, BOP correctional officers have been held to be subject to the law enforcement exception. *See Dickson v. United States*, 11 F.4th 308, 314 (5th Cir. 2021) ("BOP officials are 'law enforcement officers' within the meaning of the law enforcement proviso.").

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents AND Jury Demand [Case No. 2:24-cv-656-KKE] - 3

Plaintiff Trevor Keegan
19337 63RD PL NE
KENMORE, WASHINGTON 98028
(425)-318-9505

Derr was not directly responsible for calculating sentences or release dates per BOP Policy, but instead merely executing her duties pursuant to policy and the sentence calculations made by other BOP employees, it is not readily apparent that Derr *intended* to violate Keegan's rights.

Further, Derr had a reasonable assumption that the calculation provided would be correct and she applied them. Importantly, had the Designation and Sentence Computation Center provided the correct date for Keegan's release, it can be assumed that Derr would have applied that date instead. Nonetheless, Derr should have cooperated with Keegan's Habeas Petition as opposed to actively arguing against it.

Additionally, Kris Robl, Keegan's unit manager, and the respondent to his BP-8 administrative review would likely not be an appropriate defendant pursuant to *Bivens* because he responded to Keegan's BP-8 in error. He admitted such an error in argument later against Keegan's habeas petition. Further, Robl does not appear to have stepped outside of the scope of his employment. Despite this, his actions or omissions contributed to the violation of Keegan's rights. During this time, Robl met the Government's requirements to be considered a law enforcement officer; empowered to search, make arrests, or seize evidence.

It would not be appropriate to name every individual BOP staff member as a defendant who simply searched Keegan or confined him to his cell as a part of routine procedure. Keegan respects the "breathing room" that other courts have given to these officials. Important to Keegan's case is systemic influence. Robl and Derr don't appear to have had the same systemic influence as Giddings. Therefore, their actions to confine Keegan don't appear to have required them to step outside the scope of their employment. Given that Robl and Derr were acting as law enforcement, the United States is liable under the FTCA's law enforcement proviso.

Many of those who contributed to Keegan's unlawful imprisonment were acting as law enforcement officers under the government's own guidelines and 18 U.S.C. § 3050. Consequently,

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents AND Jury Demand [Case No. 2:24-cv-656-KKE] - 4

Plaintiff Trevor Keegan 19337 63RD PL NE KENMORE, WASHINGTON 98028 (425)-318-9505

the government's sovereign immunity defense does not apply. This Court has jurisdiction over Keegan's FTCA claims pursuant to 28 U.S.C. § 1346(b)(1) and 29 U.S.C. § 216(b). Venue is proper in the Western District of Washington under 28 U.S.C. § 1402(b).

However, Keegan agrees that not all actors were indeed acting within the scope of their employment. Acting Chief of the Unit Management Section of the Bureau of Prisons (BOP), Susan Giddings, could not have been acting within the scope of her employment because her role does not grant her a license to violate constitutional rights. Giddings violated Keegan's Fourth Amendment rights against unlawful seizure. Prolonged detention due to abuse of process is not an innocent mistake. In *Manuel v. City of Joliet*, 580 U.S. 357 (2017), the Supreme Court held that detention without probable cause violates the Fourth Amendment.

Additionally, in *Brodie v. Pillar*, the court ruled that the BOP failed to provide a legal basis for refusing to calculate FSA time credits, stating:

*"Respondent has offered no legal basis for its decision to refuse to calculate FSA Time Credits for Petitioner's qualifying participation in programming... Respondent does not cite, and the Court has not located, any part of the Rule that imposes or authorizes this 18-month cutoff, nor any statutory authority under which such a rule could be promulgated."*

A *Bivens* action may be filed in a district court (1) where any defendant resides, provided all defendants reside in the same state as the court, or (2) *where a significant portion of the actions or omissions giving rise to the claim occurred*. If neither of these options is available, the claim may be filed in any district where the court has personal jurisdiction over any defendant. See 28 U.S.C. § 1391(b)(1)-(3). Because a significant portion of Keegan's false imprisonment occurred in the Western District of Washington, this Court has jurisdiction over the claims pursuant to *Bivens v. Six Unknown Named Narcotics Agents*, under 28 U.S.C. § 1391(b)(2).

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents AND Jury Demand [Case No. 2:24-cv-656-KKE] - 5

Plaintiff Trevor Keegan 19337 63RD PL NE KENMORE, WASHINGTON 98028 (425)-318-9505

In *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court ruled that a *Bivens* claim is not displaced by an FTCA claim. This means that the existence of an FTCA avenue does not bar Keegan from pursuing a *Bivens* claim against Giddings in her individual capacity. The FTCA does not replace *Bivens*, as it does not provide punitive damages or serve as a deterrent against individual misconduct.

Beyond her role in delaying the application of FSA credits, Giddings' actions suggest that she actively positioned herself to profit from the very inefficiencies and confusion she helped create. Now a private business owner, she presents herself as an expert in federal prison policies. As recently as February 5, she appeared as a consultant on *Federal Prison Authority* during Bruce Cameron's show, where she offered guidance on how inmates could navigate the very system she helped make more difficult to understand.

This raises a troubling conflict of interest. While in a position of law enforcement authority, Giddings purported policies that made it more difficult for inmates to receive the credits they were lawfully entitled to. Now, in her private capacity, she profits by offering solutions to a problem she contributed to creating. This pattern of conduct—deliberate delays, reliance on procedural barriers, and later monetizing the resulting confusion—further supports Keegan's claim that Giddings acted outside the scope of her employment and in violation of his constitutional rights.

This case is not only a case of bureaucratic inefficiency or negligence. It is part of a systemic failure that Giddings both purported in and later makes a profit on. Giddings was not acting in furtherance of the law when instilling the offending policies. She was dictating a law enforcement agency's policy in a way that ultimately benefited her after leaving her BOP position. Unfortunately, at the cost of Keegan's rights as guaranteed under the Constitution, further underscoring why a *Bivens* claim is necessary to hold Giddings accountable in her individual capacity.

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents AND Jury Demand [Case No. 2:24-cv-656-KKE] - 6

Plaintiff Trevor Keegan
19337 63RD PL NE
KENMORE, WASHINGTON 98028
(425)-318-9505

**Private Analog**

The FTCA "allows the United States to be liable if a private party would be liable under similar circumstances in the relevant jurisdiction." The government argues that there is "no private analogue" for wrongful over-detention because determining release dates is a uniquely governmental function. However, Washington State law and federal case law clearly establish that private entities engaged in detention and release decisions can be held liable if they unlawfully deprive one of their liberties.

The government argues that "authority to detain other persons and determine the length of their sentences is a uniquely governmental function that has no private analogue." Keegan disputes this. Private Prison operators regularly house, detain, and release inmates based on calculated sentences. According to a recent government report (see exhibit A). It was only within the last decade that private prisons contracted by the federal government stopped calculating sentences.

Additionally, Psychiatric hospitals and civil commitment facilities similarly detain individuals and make determinations about the appropriateness of their release. Further, when they overstep their lawful authority to do so, they are held liable when they unlawfully extend confinement beyond legal authority (*Vanhorn v. Oelschlager*, 502 F.3d 775 (8th Cir. 2007)).

Washington State's Department of Health has specifically sanctioned private healthcare providers for detaining individuals past their lawful release date, proving that private actors in Washington can be held liable for over-detention. See *In re: Kim Marie Eldridge*, No. M2021-759 (Wash. Dep't of Health 2022), where a private healthcare provider was disciplined for unlawfully detaining a patient beyond legal authorization.

These precedents directly contradict the government's claim that no private analogue exists for over-detention claims. If psychiatric hospitals, and healthcare providers can be sued for over-detention, BOP officials should not be immune under the FTCA for the same misconduct.

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims
Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents
AND Jury Demand
[Case No. 2:24-cv-656-KKE] - 7

Plaintiff Trevor Keegan
19337 63RD PL NE
KENMORE, WASHINGTON 98028
(425)-318-9505

**Conclusion**

Based on the analysis above, Keegan has established that jurisdiction and venue are proper in Washington for all of his claims. The Government's sovereign immunity defense fails under the law enforcement proviso of the FTCA, as BOP personnel acting under the color of law or otherwise as law enforcement officers under 28 U.S.C. § 2680(h). The Government's contention that there is no private analog to wrongful over-detention is also incorrect, as private entities in Washington, including psychiatric hospitals and civil commitment facilities, are routinely held liable for unlawfully extending confinement beyond legal authorization.

Jurisdiction is proper under 28 U.S.C. §§ 1346(b)(1) and 1402(b) for the FTCA claim and 28 U.S.C. § 1391(b)(2) for the Bivens and § 1985(3) claims. Venue is proper in the Western District of Washington, as a substantial part of the acts and omissions leading to Keegan's unlawful detention occurred within this jurisdiction.

With the systemic nature of the violations at issue, this Court should permit Keegan's claims to proceed against both the United States under the FTCA and Giddings in her individual capacity under Bivens. The FTCA ensures institutional accountability, while Bivens addresses individual misconduct that contributed to Keegan's prolonged detention. This Court should permit this case to continue to protect Keegan's constitutional rights, serving to disrupt the Bureau of Prisons' attempts to evade judicial scrutiny for continued resistance to statutory mandates while simultaneously punishing Giddings and deterring future similar conduct.

**III.   FACTS**

a.  In May 2021, Mr. Keegan pleaded guilty to a single count relating to a 2020 Conspiracy to distribute Lysergic Acid Diethylamide in case number 1:20-Cr-00076, District of Hawaii. He was subsequently sentenced to 15 months imprisonment and two years of supervised release. He was given 7 days credit for the time he served in pre-trial detention

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims
Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents
AND Jury Demand
[Case No. 2:24-cv-656-KKE] - 8

Plaintiff Trevor Keegan
19337 63ᴿᴰ PL NE
KENMORE, WASHINGTON 98028
(425)-318-9505

subsequent to his arrest in May of 2020. On August 30, 2021, Mr. Keegan self-surrendered to FDC Honolulu to serve his sentence.

b. While Mr. Keegan was serving his sentence, the FSA required the Bureau of Prisons to Phase in a risk and needs assessment system and provide incentives to inmates to receive reductions in their sentences in exchange for participation in Evidence Based Recidivism Reduction Programming or Productive Activities.

c. On January 12, 2022, the BOP set in place interim procedures. Under the interim procedures, Mr. Keegan was assigned a cutoff date for earning FSA Credits of December 25, 2024. In other words: under the interim procedures, Mr. Keegan would not earn any more FSA credits, regardless of his eligibility to earn FSA credits.

d. As a part of these interim procedures, the BOP decided to set cutoff dates for manual FSA time credit calculations to "ease the burden on staff."

e. These interim procedures remained in effect during this initial period, and continued until implementation of an auto-calculation application to BOP's real-time information system (known as SENTRY) and full integration between SENTRY and BOP's case management system (known as INSIGHT).

f. The BOP's auto calculation software was not operational prior to Mr. Keegan's release on July 19, 2022.

g. BOP's auto calculation software was not operational until at least November 2022.

h. Prior to January 2022, the Bureau of Prisons held the legal position that it was not required to award First Step Act Credits until 2022, after the Program's statutory phase-in period. On January 19, 2022, more than three years after the First Step Act went into effect, the BOP Published through the Federal Register their procedures for earning and applying time credits, acknowledging a responsibility to calculate and apply the earned time credits.

i. The Bureau of Prisons acknowledged and affirmed their responsibilities via the Federal Register, published on January 19, 2022.

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents AND Jury Demand [Case No. 2:24-cv-656-KKE] - 9

Plaintiff Trevor Keegan
19337 63RD PL NE
KENMORE, WASHINGTON 98028
(425)-318-9505

j. Defendants had no legal justification for confining Mr. Keegan between May 11, 2022, and July 19, 2022.

k. On January 25, Mr. Keegan noticed his release date seemed to remain unchanged. He began to seek redress for this immediately, via informal resolution with staff, then escalating to the Bureau of Prisons' administrative remedy process, and ultimately escalating to a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241.

    i. Initially, Mr. Keegan was told via email from Kris Robl that 44 First Step Act Credit days were applied to his sentence. He Emailed Unit Manager Robl and copied another Unit Team member outlining that he believed that his credits were incorrectly calculated. Outlined his reasoning that he should have significantly more credits and asking for recalculation.

    ii. On February 9th, 2022, Mr. Keegan approached Kris Robl within his housing unit and verbally presented these questions to Mr. Robl after not receiving a response to his January 25 email. Mr. Robl informed Mr. Keegan at that time that the release date calculations are done off-site at Grand Prairie Texas. After that conversation, Mr. Keegan recapped the conversation via email to Mr. Robl, reiterating his concern that his release date was unchanged, and asked for Contact information for the BOP staff responsible for FSA credit calculation.

    iii. On February 22, 2022, Mr. Keegan requested and submitted a BOP form BP-8 outlining his grievance and the informal steps he had taken to attempt to resolve this issue. A BP-8 is the first step in the Administrative Remedy Process; it is sent to Unit Team Staff.

    iv. Mr. Keegan's BP-8 did not receive a response prior to March 1, 2022.

    v. On March 1, 2022, Mr. Keegan requested and filed a BP-9 form. A BP-9 is the second step in the Administrative Remedy Process; it is sent to the Warden of the prison where the inmate is confined.

    vi. Mr. Keegan's BP-9 form was not marked as received until March, 7, 2022.

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents AND Jury Demand
[Case No. 2:24-cv-656-KKE] - 10

Plaintiff Trevor Keegan
19337 63ᴿᴰ PL NE
KENMORE, WASHINGTON 98028
(425)-318-9505

vii. On March 2, 2022, Mr. Keegan received a response to his BP-8 form from Unit Manager Kris Robl. It stated, "According to your sentence computation, your PRD was adjusted on January 20, 2022, and accurately calculated by the office of research and evaluation."

l. On March 7, Mr. Keegan filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. 2241 with the District of Hawaii after seeing little action on his requests to correct his sentence.

m. On March 24, Mr. Keegan was informed his BP-9 required additional time for response by the Warden. This was responded to as follows:

i. On April 6, 2022, Mr. Keegan received a response from the Warden on his administrative remedy. Warden Derr explained that on March 25, 2022, the Office of Research and Evaluation conducted a manual recalculation of Mr. Keegan's time credits.

ii. Derr explained that Mr. Keegan was eligible for 15 days off per 30 days incarcerated at the designated facility.

iii. Derr confirmed that as of August 30, 2021, Mr. Keegan was considered designated to FDC Honolulu.

iv. Derr explained that the Office of Research and Evaluation assigned a cutoff date of December 25, 2021, for all inmates who are within 24 months of their statutory release date based on the BOP's interim procedures for the First Step Act.

v. On April 6, 2022, the same day he received his response Mr. Keegan requested a BP-10 form. This is the third step in the administrative remedy process and is addressed to the BOP Regional Office. Mr. Keegan sent this letter by US mail.

vi. Mr. Keegan did not ever receive a receipt, response, or acknowledgement for his BP-10.

n. On April 12, 2022, Warden Derr submitted her response to Mr. Keegan's 2241 Habeas Petition. In Derr's Response:

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents AND Jury Demand [Case No. 2:24-cv-656-KKE] - 11

Plaintiff Trevor Keegan
19337 63RD PL NE
KENMORE, WASHINGTON 98028
(425)-318-9505

i. Warden Derr submitted declarations from Kris Robl, FDC Honolulu's Unit Manager, and Susan Giddings, the BOP's Chief of Unit Management. Giddings stated:

"To date, ORE has not recalculated Petitioner's time credits to reflect credit for the past three months (January – March) despite his eligibility to earn time credits. Like many other similarly situated BOP inmates, Petitioner's FSA time calculations are governed by the interim guidance. At this time, the BOP does not intend to recalculate time credits for inmates with a cutoff date of December 25, 2021, until implementation of the automated system."

ii. Susan Giddings' above statement acknowledged that Mr. Keegan was eligible for 15 days per 30 days incarcerated of Earned Time Credits after the cutoff date, but they wouldn't be applied until the automated calculation application was implemented.

iii. Derr argued that the Bureau of Prisons had absolute agency discretion to implement and enforce the FSA, contrary to the Agency's affirmation of their responsibility in the Federal Register.

o. On May 19, 2022, Keegan was Transferred to BOP's Contracted Residential Re-Entry Center, Pioneer Fellowship House in Seattle, WA.

p. BOP's FSA Credit auto calculation software was not put in place prior to Mr. Keegan's release. Mr. Keegan was released on July 19, 2022.

q. Mr. Keegan's illegal imprisonment and the conditions thereof are in part the result of the acts and omissions of BOP employees acting within the course and scope of their employment with the BOP.

r. Mr. Keegan's illegal imprisonment and the conditions thereof are in part the result of the acts and omissions of BOP employees acting outside the course and scope of their employment with the BOP.

s. On March 8, 2023, Hon. Leslie Kobayashi filed an Order Granting in Part and Denying in Part Mr. Keegan's initial 2241 Petition. The Court first evaluated its jurisdiction over the Petition, the Petition's mootness, and the requirement to exhaust administrative remedies. The Petition was considered not moot due to Mr. Keegan's ability to derive some relief from the supervised release portion of his sentence. The Administrative

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents AND Jury Demand [Case No. 2:24-cv-656-KKE] - 12

Plaintiff Trevor Keegan 19337 63RD PL NE KENMORE, WASHINGTON 98028 (425)-318-9505

remedy requirement was waived at the Court's discretion as Mr. Keegan was unable to exhaust administrative remedies. In Granting Mr. Keegan's Petition in part, the Court ordered Derr to calculate the FSA Time Credits Keegan would have earned and issue a declaration that "provides the amount of additional earned time credits Keegan should be awarded."

t.  Pursuant to the March 8, 2023 order:

  i.  On April 7, 2023, Warden Derr submitted a Declaration of Kris Robl.

  ii.  Robl calculated that Mr. Keegan would have earned 50 days of FSA Credits between December 25, 2021

  iii.  Robl calculated that Keegan's release would have been in the "end of May."

  iv.  Robl Confirmed that Mr. Keegan had a low or minimum risk for recidivism as classified by the Bureau of Prisons.

u.  In consideration of Derr's response, the Court ordered the US Probation office to apply those 50 days to Mr. Keegan's term of supervised release and then closed the case.

v.  Mr. Robl did not account for the additional 5 days per 30-day period that Mr. Keegan was entitled to due to his low risk for recidivism as classified by the Bureau of Prisons. Mr. Keegan's Eligibility was also affirmed in Warden Derr's responses to Mr. Keegan's 2241 Petition.

w.  Mr. Keegan filed a motion with the District of Hawaii to Reopen his initial Petition case, seeking an order to Warden Derr to apply the additional 5 days per 30-day period. Because the case was closed, and Mr. Keegan was no longer a resident in the District of Hawaii, that motion was denied. Mr. Keegan re-filed his Petition in the Western District of Washington. However, by the time this Petition was ruled upon, Mr. Keegan was granted early termination of his supervised release. Accordingly, Mr. Keegan's 28 USC § 2241 Petition filed in Seattle was dismissed as Moot.

x.  During his term of imprisonment, Mr. Keegan was not subject to any disciplinary actions or other events which would have resulted in the loss of good time credit or First Step Act

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents AND Jury Demand
[Case No. 2:24-cv-656-KKE] - 13

Plaintiff Trevor Keegan
19337 63RD PL NE
KENMORE, WASHINGTON 98028
(425)-318-9505

Credit. On May 11, 2022, Mr. Keegan had been incarcerated for 273 days at his designated facility. Mr. Keegan was considered a Low or Minimum risk recidivism level by the BOP, making him eligible for 15 days for every 30 days incarcerated.

    i.  On April 28, 2024, Mr. Keegan submitted a Freedom of Information Request to the BOP, requesting a copy of Mr. Keegan's prison file. As of the date of this Complaint, Mr. Keegan's request has not been acknowledged or fulfilled.

y.  Calculating Mr. Keegan's by the rate at which Mr. Keegan would have accumulated these credits, (15days credit/30days incarcerated at designated facility) He was eligible for release with the application of his FSA Credit on May 11th, 2022.

    i.  The Federal Register also outlined that

        1.  "Unless an inmate formally declines recommended programming addressing his or her unique needs, or is not participating in any activities, the assumption is that the eligible inmates will be earning time credits."

        2.  "Interruptions in participation that are unrelated to an inmate's refusal or other violation of programing requirements, such as the unavailability of a program or its full enrollment, or interruptions authorized by the bureau, will not affect the inmate's ability to earn time credits."

Accordingly, Keegan's legally mandated release was on May 11, 2022.

z.  Pursuant to 28 U.S.C. § 2675 and 28 C.F.R. § 14.2, Mr. Keegan (Pro Se) submitted a claim under the Federal Tort Claims Act to the BOP by certified mail on July 12, 2023, regarding his illegal imprisonment. The Certified Tracking number, 9589071052700100937548, indicates that it was delivered on July 17, 2023. As of the date of this Complaint, the BOP has not responded to Mr. Keegan's claim.

aa.  Leading up to, and between May 11 and July 19, 2022, Susan Giddings was an employee of the United States Department of Justice, Federal Bureau of Prisons ("BOP"). Specifically, the Chief of the Unit Management Section of the Correctional Programs

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents AND Jury Demand [Case No. 2:24-cv-656-KKE] - 14

Plaintiff Trevor Keegan 19337 63RD PL NE KENMORE, WASHINGTON 98028 (425)-318-9505

Branch ("CPB"), which is organized under the Correctional Programs Division ("CPD") in the BOP's Central Office located in Washington, D.C.

bb. Giddings worked for the BOP since February 1991 and assumed Unit Management Section Chief since December 2019.

cc. As the Unit Management Section Chief, Giddings was responsible for overseeing Correctional Systems and the BOP's national Victim and Witness Program. Additionally, Giddings was intimately involved in the development and implementation of the BOP's FSA procedures.

dd. On or about April 4th, 2022, Giddings researched and acknowledged her awareness of Keegan's specific situation through her official access to BOP Systems. She acknowledged specifically:

    i. Keegan' FSA eligibility status showed "eligible," meaning he was eligible to apply earned time credits towards his statutory release date.

    ii. Interim procedures interfered with Keegan's FSA Credit application.

    iii. These interim procedures were intended to remain in effect and to continue until implementation of an autocalculation application to BOP's real-time information system (known as SENTRY) and full integration between SENTRY and BOP's case management system (known as INSIGHT).

    iv. The BOP decided to set certain cutoff dates for manual FSA time credit calculations to ease the burden on staff. Once an inmate's time credit was calculated, it would not be recalculated again until implementation of the automated computation system.

    v. Keegan's calculation was to remain at 58 days despite his eligibility to earn additional days each month.

    vi. The BOP had already omitted three months (January through March) of Keegan's FSA time credits.

    vii. The BOP had no intention of recalculating Keegan's release date, unless the autocalculation application had gone live. Only after the auto-calculation application

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents AND Jury Demand [Case No. 2:24-cv-656-KKE] - 15

Plaintiff Trevor Keegan
19337 63RD PL NE
KENMORE, WASHINGTON 98028
(425)-318-9505

was completed, would time credits be applied and inmate sentence computations be updated to reflect the additional credit earned

viii. FSA Credits are earned as they accumulate.

ix. Under Interim Procedures, BOP calculated credit based on the total number of days in the inmate's designated facility, divided by 30 days (one month average), and multiplied by 15 (the allowable credit for inmates with Low or Minimum risk levels such as Keegan).

x. Keegan would be released on July 19, 2022.

ee. As of May 2, 2024, Giddings is now operating as a "Business Owner" of "SMGiddings LLC" with additional capacities as a "Consultant and Author."

i. In this capacity Giddings has released a book called "Unlocking Federal Time Credits," published on June 20, 2024.

ii. This book is Co-authored with Bruce W. Cameron, this book is sold for a profit as "A guide for Attorneys, Inmates, and Families."

iii. Giddings has made appearances with Cameron on social media pages such as the "Federal Prison Authority," and "Federal Prison Consulting" Facebook pages.

iv. In one such appearance as recent as February 5th, 2025 on "Federal Prison Authority" Giddings and Cameron "Go Over how to acquire time credits so inmates can be released early from Federal Prison."

v. In her LinkedIn profile, Giddings lists "Skills" that she uses for SMGiddings LLC. Those skills listed are: "Public Policy, Corrections, *Problem Solving*, Curriculum Development, Case Management."

## IV.    Requested Relief

Count 1: False Imprisonment under the Federal Tort Claims Act:

1. Keegan incorporates the foregoing paragraphs as if set forth herein.

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents AND Jury Demand [Case No. 2:24-cv-656-KKE] - 16

Plaintiff Trevor Keegan 19337 63RD PL NE KENMORE, WASHINGTON 98028 (425)-318-9505

2. Between May 11 and July 19, 2022, Defendant United States committed acts intended to confine Keegan at FDC Honolulu and other BOP Contracted facilities.

3. Keegan was in fact confined as intended by employees of Defendant, United States. Such employees were acting in a law enforcement capacity.

4. Keegan was aware of and did not consent to his confinement.

5. Defendant had no legal justification for confining Keegan between May 11 and July 19, 2022.

6. Defendant United States was obligated under 18 U.S.C. § 3624, 18. U.S.C. 3632 (4)(A)(i), (4)(A)(ii), 4(C), as well as 18 U.S.C. 3631 (b)(4)(e) and (b)(5), and other law to release Keegan from prison at the expiration of his term of imprisonment, accounting for good time credit and First Step Act's Earned time credits, on May 11, 2022.

7. Keegan sustained damages in the amount of $83,727.36 for the pain and suffering, emotional distress, loss of liberty and enjoyment of life, and economic loss he suffered because of the false imprisonment he endured for 69 days.

8. Mr. Keegan is entitled to recover the damages he sustained under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680.

Count II: Negligence under the Federal Tort Claims Act

1. Keegan incorporates the foregoing paragraphs as if set forth herein.

2. Defendant United States owed Keegan a duty under 18 U.S.C. § 3624, the The United States Constitution, and other law to release him from prison at the expiration of his term of imprisonment, accounting for good time credit and FSA earned time credits, on May 11, 2022.

3. Defendant United States breached this duty when it failed to release Keegan in May 2022, and thereafter until his release on July 19, 2022.

4. Keegan sustained damages in the amount of $83,727.36 for the pain and suffering, emotional distress, loss of liberty and enjoyment of life, and economic loss he suffered because of the Defendant United States's negligence.

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents AND Jury Demand [Case No. 2:24-cv-656-KKE] - 17

Plaintiff Trevor Keegan 19337 63RD PL NE KENMORE, WASHINGTON 98028 (425)-318-9505

5. Keegan is entitled to recover the damages he sustained under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680.

Count III: Fourth Amendment Violation Resulting from Abuse of Process under Bivens

1. Keegan incorporates the foregoing paragraphs as if set forth herein.

2. Defendants Susan Giddings, acting under the color of federal law, purported an unlawful policy or "interim procedure" that caused or permitted Keegan's overincarceration beyond May 11, 2022, depriving him of his liberty guaranteed by the fourth amendment.

3. This policy was a contravention of a clear congressional directive to the Bureau of Prisons outlined in the First Step Act to calculate and apply earned time credits to inmates as such credits are earned.

4. Giddings was aware that the consequences of this policy would result in the BOP's failure to release Keegan timely, yet she refused to intervene.

5. BOP staff applied this policy knowing that it would result in Keegan's unlawful confinement.

6. Keegan made repeated requests through administrative and judicial channels for his lawful release in real time, however Giddings actively argued against his release continuing to allow her policy to result in Keegan's false imprisonment.

7. This extended detention was a Fourth Amendment violation: unreasonable seizure.

8. Giddings was especially competent to understand that her actions involved a constitutional violation.

   a. Giddings is well educated, boasting a Doctorate of Philosophy (Ph.D.) in Criminal Justice and Corrections.

   b. Giddings was made aware of Keegan's case in real time and had substantial opportunity to correct the policy she had enacted before it caused irreparable harm to Keegan. Giddings displayed willful indifference to Keegan's *clearly established* and constitutionally protected rights. She did not take action despite

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents AND Jury Demand [Case No. 2:24-cv-656-KKE] - 18

Plaintiff Trevor Keegan
19337 63RD PL NE
KENMORE, WASHINGTON 98028
(425)-318-9505

acknowledging Keegan's eligibility for first step act credit application and implicit earlier release.

    c. Policy Making was part of Giddings' official duties. However, Giddings did not have the discretion to implement a policy that would violate 18 U.S. Code § 3624 nor the Constitution.

9. Giddings purported a policy contradictory to federal law and was willfully indifferent to correct it as necessary to protect Keegan's clearly established rights under the Constitution. Giddings was aware Keegan would not be released timely, thus stepping outside of the scope of her employment.

10. By displaying willful indifference to a clearly established right, she is liable under a civil rights action such as Bivens.

11. Keegan is entitled to recover punitive damage under Bivens.

12. Keegan requests punitive damages in the amount of $2,000,000.00 in punitive damages to punish and deter intentional conduct such as this in the future.

## V.   Jury Demand

Keegan demands a trial by jury on all counts so triable and any other such counts which may hereafter be alleged. WHEREFORE, Plaintiff Trevor Keegan respectfully requests the Court grant the following relief:

1. Findings that:

    a. Defendant United States, through the acts or omissions of law enforcement employees, falsely imprisoned Mr. Keegan, breached its duty to release him, and is liable to him for the damages he sustained. or

    b. Defendant United States, through the acts or omissions of law enforcement employees, negligently confined Mr. Keegan beyond his release date, breached its duty to release him, and is liable to him for the damages he sustained.

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents AND Jury Demand [Case No. 2:24-cv-656-KKE] - 19

Plaintiff Trevor Keegan
19337 63RD PL NE
KENMORE, WASHINGTON 98028
(425)-318-9505

c.  Defendant Susan Giddings displayed willful indifference to a clearly established right and is liable under a civil rights action such as Bivens.

2.  Money Judgements as follows:

a.  A money judgement against Defendant United States in the amount of $83,727.36 as and for compensatory relief for the damages Keegan sustained because of his false imprisonment and/or Defendant United States' negligence. An award against Defendant for the costs and expenses incurred by Plaintiff in bringing this action;

b.  A money judgement against Defendant Susan Giddings, and any other defendant assuming discovered, in the amount of $2,000,000 as and for punitive damages to punish and deter the willful indifference displayed to Keegan's clearly established constitutionally protected rights against search and seizure and to due process.

3.  An award against Defendants for prejudgment interest as applicable; and

4.  Any further and additional relief the Court deems just and equitable.

DATED this 7th day of March, 2025

Respectfully submitted,

TREVOR KEEGAN
19337 63rd PL NE
Kenmore, WA 98028
Email: trevorjkeegan@gmail.com
425-318-9505
*Plaintiff, proceeding pro se*

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents AND Jury Demand [Case No. 2:24-cv-656-KKE] - 20

Plaintiff Trevor Keegan
19337 63RD PL NE
KENMORE, WASHINGTON 98028
(425)-318-9505

CERTIFICATE OF SERVICE AND

REQUEST FOR SERVICE BY U.S. MARTIAL

I hereby certify that on todays date, I furnished the forgoing with the clerk of court and with the United States Attorney's offices to the addresses of record via certified mail:

AUSA LYNDSIE R. SCHMALZ
U.S. Atty's Office W. Dist of WA
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Email: lyndsie.r.schmalz@usdoj.gov

PAMELA BONDI
Office of the Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Additionally, Keegan requests service by United States Martials Service Susan Giddings.

For the reasons below:

1. Keegan is unaware of Susan Giddings' residential address.

2. Keegan cannot personally serve Giddings.

3. Giddings appears to do business at, and may be servable at:

UNITED STATES CORPORATION AGENTS, INC.
1991 CROCKER RD # 600-755
WESTLAKE OH 44145

4. Keegan requires the United States Martials Service to locate and serve Giddings.

DATED this 7th day of March, 2025

Respectfully submitted,

*Trevor Keegan*

TREVOR KEEGAN
19337 63rd PL NE
Kenmore, WA 98028
Email: trevorjkeegan@gmail.com
425-318-9505
*Plaintiff, proceeding pro se*

Amended Complaint Amended Complaint Pursuant to the Federal Tort Claims
Act, 28 U.S.C. § 1391(b)(2) Bivens v Six Unknown Named Narcotics Agents
AND Jury Demand
[Case No. 2:24-cv-656-KKE] - 21

Plaintiff Trevor Keegan
19337 63RD PL NE
KENMORE, WASHINGTON 98028
(425)-318-9505