UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TREVOR KEEGAN,

                            Plaintiff,

        v.

UNITED STATES OF AMERICA, et al.,

                            Defendants.

CASE NO. C24-0656-KKE

ORDER GRANTING DEFENDANT SUSAN GIDDINGS' MOTION TO DISMISS

        Plaintiff Trevor Keegan, representing himself, brings this lawsuit against the United States and Susan Giddings, a former Bureau of Prisons ("BOP") employee, seeking money damages in connection with a BOP policy that allegedly caused him to be detained past his rightful release date. Keegan initially sued the United States under the Federal Tort Claims Act ("FTCA"), and later added a claim against Giddings under *Bivens v. Six Unknown Named Narcotics Agents*, 403 U.S. 388 (1971). The Court dismissed Keegan's original complaint and subsequently dismissed with prejudice all claims in his amended complaint against the United States based on sovereign immunity. Giddings now moves to dismiss Keegan's *Bivens* claim, both because a *Bivens* remedy is unavailable in this case and because qualified immunity bars his claim. Dkt. No. 48.

        Because the Court agrees that a *Bivens* cause of action is unavailable here, the Court will dismiss Keegan's claim against Giddings. The Court will not reach whether qualified immunity

ORDER GRANTING DEFENDANT SUSAN GIDDINGS' MOTION TO DISMISS - 1

poses a further bar to relief.

## I.     BACKGROUND

**A.     Factual History[1]**

Keegan's claims relate to the calculation of time credits under the First Step Act ("FSA"), Public Law No. 115-391, which states that a prisoner "shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities."  18 U.S.C. § 3632(d)(4)(A)(i).  While incarcerated, Keegan was eligible to earn FSA time credits.  *Keegan v. Derr*, CV22-089-LEK-RT (D. Haw. Apr. 12, 2022), Dkt. No. 12-8 ¶ 4(c).

Following the FSA's enactment, the BOP published final implementing regulations on January 19, 2022.  *See* Dkt. No. 31 ¶ 7.  To implement the FSA final rule, BOP instituted "interim procedures," which required staff to manually calculate individual prisoners' FSA time credits until the BOP rolled out an auto-calculation application, which BOP accomplished in November 2022.  *Id*. ¶¶ 7–8.  Under the interim procedures, BOP staff manually calculated FSA time credits for a subset of prisoners "within 24 months of their statutory release date."  *Id*. ¶¶ 9–11.  After calculation, BOP staff would upload that information into a system for the BOP Designation and Sentence Computational Center to update the prisoners' projected release dates.  *Id*. ¶ 11.  Once BOP staff manually calculated a prisoner's FSA time credits under these interim procedures, the credits "were not calculated again."  *Id*.

Keegan's FSA time credits were adjusted on January 20, 2022, applying credits earned as of December 25, 2021.  Dkt. No. 31 ¶ 13, Dkt. No. 22 at 11.  BOP calculated "58 days of credit

---

[1] For purposes of this motion, the Court accepts the factual allegations in Keegan's amended complaint as true.  The Court also takes judicial notice of the filings and orders in this district fi led and the District of Hawaii from the other cases Keegan filed on this issue.  *See Pimentel-Estrada v. Barr*, 464 F. Supp. 3d 1225, 1230 (W.D. Wash. 2020).

ORDER GRANTING DEFENDANT SUSAN GIDDINGS' MOTION TO DISMISS - 2

between August 30, 2021, and December 25, 2021," leading to a release date of July 19, 2022. *Keegan v. Derr*, CV22-089-LEK-RT (D. Haw. Apr. 12, 2022); Dkt. No. 12-8 ¶¶ 6(g), 7.

In Plaintiff's prior habeas petition, the Unit Manager at the Honolulu Detention Center attested that Plaintiff earned an additional 50 days of FSA credit after December 25, 2021, which would have made his release date May 2022. *Keegan v. Derr*, CV22-089-LEK-RT (D. Haw. Apr. 7, 2023); Dkt. No. 20-1 ¶ 5. On May 3, 2023, the District of Hawaii closed Keegan's habeas case by granting in part his habeas petition and ordering "the United States Probation Office to apply Keegan's fifty earned FSA time credits to the term of supervised release that was imposed in the judgment." *Id*. Dkt. No. 21 at 2, Dkt. No. 18. Plaintiff moved to reopen this habeas case to apply an additional 19 days of FSA credit for his low risk of recidivism, but the court denied the motion because Plaintiff had been transferred to the Western District of Washington at that point. *Id*., Dkt. No. 25.

**B.    Procedural History**

Plaintiff first filed his complaint for damages against the United States under the FTCA due to his alleged 69 days of over-incarceration. Dkt. No. 1. The Court granted the United States's motion to dismiss for lack of subject matter jurisdiction, holding that sovereign immunity barred Keegan's claims, and granted Plaintiff leave to amend. Dkt. No. 21. The Court found that Plaintiff did not demonstrate that the United States waived its sovereign immunity because the FTCA's immunity waiver excepts claims of false imprisonment and because Keegan presented no private analogue for the miscalculation of FSA time credits, as required under the FTCA. *Id*. at 7–8.

Plaintiff filed an amended complaint, bringing two claims against the United States, again under the FTCA, and one claim against a new defendant, Giddings, under *Bivens*. Dkt. No. 22 at 17–19. Keegan's *Bivens* claim against Giddings, the former Acting Chief of BOP's Unit Management Section, asserts that Giddings caused his over-incarceration by promulgating the

interim procedures that led to the miscalculation of his FSA time credits.  Dkt. No. 22 at 18–19.  Keegan contends that the prolonged detention that resulted constituted an "unreasonable seizure" in violation of the Fourth Amendment.[2]  *Id.* at 18.  The Court granted the United States's motion to dismiss the FTCA claims, again finding no private analogue to the calculation of Keegan's FSA time credits and thus no waiver of sovereign immunity.  Dkt. No. 49.  Giddings now moves to dismiss the claim against her under Federal Rule of Civil Procedure 12(b)(6), arguing that no *Bivens* remedy is available in this context and that qualified immunity shields Giddings from suit.  Dkt. No. 48.  Keegan filed a response opposing the motion (Dkt. No. 52), and Giddings filed a reply (Dkt. No. 53).  Neither party requested oral argument, and Giddings' motion is now ripe for the Court's consideration.

## II.   ANALYSIS

### A.      Legal Standard under Rule 12(b)(6)

In evaluating a motion to dismiss under Rule 12(b)(6), a court examines the complaint to determine whether, assuming the facts alleged are true, the plaintiff has stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Dismissal is appropriate if the plaintiff fails to either (1) present a cognizable legal theory or (2) allege sufficient facts to support a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984).

---

[2] Keegan also refers to alleged violations of the Fifth Amendment in his amended complaint's introductory paragraph but does not reference that provision elsewhere in his pleading or his opposition to Giddings' motion to dismiss.  The Court's analysis does not change regardless of whether Keegan intends to assert a Fifth Amendment violation in addition to his Fourth Amendment claim because a *Bivens* remedy is unavailable in either case.

ORDER GRANTING DEFENDANT SUSAN GIDDINGS' MOTION TO DISMISS - 4

**B.    *Bivens* Actions Generally**

"Congress has not created a private right of action to redress constitutional violations committed by federal officers." *Sheikh v. U.S. Dep't of Homeland Sec.*, 106 F.4th 918, 924 (9th Cir. 2024). Over fifty years ago, however, the Supreme Court in *Bivens* recognized an implied "cause of action under the Fourth Amendment" to seek damages against federal narcotics agents who allegedly violated the prohibition against unreasonable searches and seizures. 403 U.S. at 397. In the decade that followed, the Supreme Court extended the *Bivens* remedy twice—first, for a former congressional staffer's gender discrimination suit under the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979), and second, for a federal prisoner's Eighth Amendment claim for inadequate medical treatment, *Carlson v. Green*, 446 U.S. 14 (1980).

Since *Carlson*, the Supreme Court has taken a "significantly more restrained approach to *Bivens* claims" and now considers *Bivens* extensions "'disfavored' judicial activity." *Sheikh*, 106 F.4th at 924 (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 121 (2017)). Emphasizing Congress's preeminent role in creating causes of action, the Supreme Court has held that extending *Bivens* remedies to new contexts is inappropriate "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy[.]" *Ziglar*, 582 U.S. at 137.

To determine whether a *Bivens* remedy is available, courts apply a two-step framework first announced in *Ziglar*. *See* 582 U.S. at 139–40. First, the court asks whether the case presents a "new *Bivens* context"—meaning, does it "'meaningful[ly]' differ[] from" *Bivens*, *Davis*, and *Carlson*, "the three cases in which the [Supreme] Court has implied a damages action." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (first alteration in original) (quoting *Ziglar*, 582 U.S. at 139). Second, if the case arises in a new context, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting

ORDER GRANTING DEFENDANT SUSAN GIDDINGS' MOTION TO DISMISS - 5

*Ziglar,* 582 U.S. at 136). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (quoting *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)).

**C.      Keegan Presents a New *Bivens* Context**

Beginning with the first step, the Court concludes that Keegan's case "is different in a meaningful way from" the three "previous *Bivens* cases decided by [the] Court." *Ziglar*, 582 U.S. at 147. Since "even a modest extension" of *Bivens* "is still an extension[,]" this inquiry is usually "easily satisfied[.]" *Id.* at 147, 149. Meaningful differences may include, among other things, "the rank of the officers involved," "the constitutional right at issue," "the generality or specificity of the official action," or "the statutory or other legal mandate under which the officer was operating." *Id.* at 139–40.

Keegan's Fourth Amendment claim challenging the implementation of BOP's policy under which his FSA time credits were allegedly miscalculated unquestionably presents a new *Bivens* context. His case simply looks nothing like the unlawful handcuffing and warrantless search in *Bivens*, the firing of a congressman's female staffer in *Davis*, or the failure to treat an inmate's asthma in *Carlson*. *See Bivens*, 403 U.S. 388; *Davis*, 442 U.S. 228; *Carlson*, 446 U.S. 14. Keegan emphasizes that, as in *Bivens*, his claim arises under the Fourth Amendment. Dkt. No. 52 at 8. But the mere fact that a case invokes the same constitutional provision as one of the three *Bivens* cases is not enough to show that it does not arise in a new context. *Hernandez*, 589 U.S. at 103 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.").

Keegan stretches to analogize his case to *Bivens* and *Davis*, arguing that, like the warrantless arrest in *Bivens*, his case "involves custodial detention by federal officials" and that, like the congressman in *Davis*, "Giddings was a federal policymaker." Dkt. No. 52 at 6–7. But

even "significant parallels to one of the Court's previous *Bivens* cases" is not necessarily enough. *Ziglar*, 582 U.S. at 147. And courts have found substantially more analogous cases different enough to constitute new *Bivens* contexts. *See, e.g., Ellawendy v. Takagaki*, No. 22-16980, 2025 WL 1419722, at *1 (9th Cir. May 16, 2025) (allegedly unlawful search and seizure of plaintiff's home presented a new context where defendants were Army officers rather than federal narcotics officers); *Williams v. Verna*, No. 19-15978, 2023 WL 5221062, at *1 (9th Cir. Aug. 15, 2023) (allegedly unlawful strip search in prison, rather than in an apartment, constituted a new context).

Keegan also relies on *Alexander v. Perrill*, 916 F.2d 1392 (9th Cir. 1990), in which the Ninth Circuit held that qualified immunity did not bar an inmate's *Bivens* action against two federal prison employees for refusing to investigate whether the inmate's sentence was incorrectly calculated. The new-context inquiry, however, looks to whether the case "is different in a meaningful way from previous *Bivens* cases *decided by the Supreme Court*, rather than any lower court." *Sheikh*, 106 F.4th at 926 (emphasis added) (citation modified). In any event, *Alexander* pre-dated *Ziglar*'s two-step inquiry and other Supreme Court decisions curtailing *Bivens* extensions. *See Egbert*, 596 U.S. at 486 (citing cases declining to extend *Bivens*). Accordingly, the Ninth Circuit never considered the availability of a *Bivens* remedy nor applied the Supreme Court's more recent guidance.

## D.    Special Factors Counsel Against Extending *Bivens* Here

Turning to *Ziglar*'s second step, the Court finds that "special factors" counsel against recognizing a *Bivens* remedy here. At this step, the Court considers "whether there is *any* rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 496 (quoting *Ziglar*, 582 U.S. at 136). The Supreme Court has cautioned that "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Id.* at 493 (quoting

*Ziglar*, 582 U.S. at 137).  Nor is the Court invited "to independently assess the costs and benefits of implying a cause of action." *Id.* at 496.

To begin, at least one other district court has recognized that the unique concerns involved in prison administration warrant hesitation against extending *Bivens* to claims challenging the calculation of FSA credits.  *See Cicchiiello v. Warden Danbury FCI*, No. 3:24CV1240, 2025 WL 437305, at *4 (D. Conn. Feb. 7, 2025).  In particular, "prison administration requires 'expertise, planning and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government.'"  *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 84–85 (1987)).

Moreover, alternative remedies to *Bivens* are available for lodging complaints about the calculation of time credits.  For one thing, BOP's Administrative Remedy Program ("ARP") provides a process "to seek formal review of an issue relating to any aspect of" an inmate's "confinement."  28 C.F.R. § 542.10.  Keegan alleges he made use of this process.  Dkt. No. 22 at 10–11.  And courts have repeatedly found the ARP to be "the type of 'alternative remedial structure' that prevents [courts] from fashioning a *Bivens* cause of action[.]"  *Ballard v. Dutton*, No. 23-6416-PR, 2024 WL 4039606, at *2 (2d Cir. Sep. 4, 2024); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (finding no *Bivens* remedy where ARP provided a "means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP").  While the Court is sympathetic to Keegan's frustration over not achieving an earlier release through this process in his case (*see* Dkt. No. 52 at 10–12), the "special factors" inquiry does not focus granularly on the "circumstances in the particular case" but "more broadly" on whether "there is any reason" that "judicial intrusion into a given field might be harmful or inappropriate." *Egbert*, 596 U.S. at 496 (citation modified).

ORDER GRANTING DEFENDANT SUSAN GIDDINGS' MOTION TO DISMISS - 8

Finally, Keegan had the ability to, and in fact did, seek redress through habeas. *See Ziglar*, 582 U.S. at 145 (distinguishing *Bivens* and *Davis* based on availability of habeas as an "alternative form[] of" relief). Indeed, Keegan succeeded in obtaining fifty days of FSA credits applied toward his term of supervised release. Dkt. No. 22 at 12–13. While Keegan contends the alternative forms of relief available to him were insufficient to deter abuses in calculating FSA time credits (Dkt. No. 52 at 14), the Supreme Court has made clear courts may not "second-guess" Congress's or the Executive's determination that a form of relief is "sufficient to secure an adequate level of deterrence[.]" *Egbert*, 596 U.S. at 498.

Accordingly, the Court declines to recognize a *Bivens* cause of action under the circumstances here and will dismiss Keegan's Fourth Amendment claim against Giddings.[3] Because Keegan has previously amended his complaint and it is clear no further amendment could satisfy the standard governing *Bivens* extensions, the court will deny leave to amend. *See Kaminsky v. Cisa, Inc.*, No. 24-CV-0286-JO-VET, 2024 WL 3330601, at \*4 (S.D. Cal. July 8, 2024) (denying leave to amend where amendment could not cure failure to state a *Bivens* claim under *Ziglar*); *see also Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").

### III.  CONCLUSION

For the reasons stated herein, the Court GRANTS Defendant Giddings' motion to dismiss. Dkt. No. 48. This case is DISMISSED with prejudice and without leave to amend.

---

[3] To the extent Keegan asserts claims against unnamed John and Jane Doe defendants, the Court dismisses those claims for the same reasons. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (indicating a district court need not grant discovery to identify Doe defendants if it is clear the complaint would be dismissed on other grounds).

ORDER GRANTING DEFENDANT SUSAN GIDDINGS' MOTION TO DISMISS - 9

Dated this 13th day of February, 2026.

Kymberly K. Evanson
United States District Judge